# McMunn *v.* The State.

### Indictment for Larceny.

1. *Evidence; admissibility of statement by witness before committing magistrate.*—On an inquiry in a criminal case as to whether a witness for the State was permanently or indefinitely absent from the State at the time of the trial, for the purpose of establishing a predicate for

[McMunn v. The State.]

the admission of secondary evidence of such witness' testimony before a committing magistrate, it was shown in behalf of the State that said witness stated at the time of the preliminary examination that "when at home he lived in Ohio;" that at that time he was camping in the county where the trial was had, and that a subpœna sent to the adjoining county was returned "not found," and a subpœna issued to the sheriff of the county where the trial was being held was returned "not found," but the officer having the subpœna testified that he looked for the witness in only two or three precincts of the county, and that he had made several inquiries at several railway stations in two or three other counties without finding such witness. The evidence in behalf of the defendant showed that the witness first came to said county prior to the preliminary trial prospecting for a home; that he expressed himself as pleased with the country and said that he was coming there from Ohio to live, and at the time of the preliminary trial he had returned to the country, travelling in a wagon with his wife and children and carrying household furniture and domestic animals, and stated to several persons that he had come to this State to live. It was further shown that he stated to several witnesses that he expected to settle in a designated portion of said county; and it was not made to appear that any inquiries were ever made by the officers seeking to serve the subpœna in that section of the county in which he had stated that he expected to settle. *Held:* that it was not shown with reasonable certainty that such witness was ever permanently or otherwise absent from the State at the time of the trial; and that it was, therefore, error to admit secondary evidence of the witness' testimony as given on the preliminary trial.

2. *Same; fact that officer looked for defendant several days before his arrest inadmissible.*—On the trial of a defendant under a charge of larceny, testimony by the officer arresting him that he looked for the defendant for three days when trying to arrest him, standing alone and unconnected with other evidence tending to show that the defendant concealed himself from a consciousness of guilt, is illegal and inadmissible.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

The appellant was indicted, tried and convicted of larceny from the person of one Charlie Vail. The principal evidence tending to show that the defendant was guilty of the offense charged was a statement by Charlie Vail and his wife, Mrs. Annie Vail, which was testified to before, and taken down by, the committing magistrate on the preliminary investigation of the defendant for the crime for which he was indicted. To the introduction of each of these written statements, the defendant objected, on the ground that no proper predicate had been laid for

their introduction. The court overruled each of these objections, admitted each of said statements in evidence, and the defendants separately excepted. The evidence introduced upon the inquiry as to whether Vail and his wife were permanently or indefinitely absent from the State at the time of the trial is sufficiently stated in the opinion.

It was further shown by the evidence for the State, that William Mitchell, a police officer of the city of Huntsville, had taken the watch, which was identified by Charlie Vail as his, from the defendant; and upon the introduction of said Mitchell as a witness, he was asked the following question : "How long did you look for him (the defendant) for stealing this man's watch?" The defendant objected to this question, because it called for illegal, irrelevant and incompetent evidence. The court overruled the objection, and the defendant duly excepted. It is unnecessary to set out the facts showing the other rulings of the trial court.

GRAYSON & FOSTER, for appellant.—There was not a sufficient predicate laid for the introduction of secondary evidence as to what the witness Vail and his wife testified on the preliminary examination of the defendant; and the court erred in admitting such evidence.—*Harris v. State,* 73 Ala. 495 ; *Wills v. State,* 73 Ala. 362 ; *Marler v. State,* 67 Ala. 55 ; *Lucas v. State,* 96 Ala. 51.

WILLIAM C. FITTS, Attorney-General, for the State. There are many exceptions directed against the testimony of the absent witnesses, Charlie Vail and Mrs. Anna Vail, and also against the evidence adduced in making out the proper predicate for the admission of the testimony of said Vails. In all of these regards this case is strikingly like that of *Burton v. State,* 107 Ala. 72, and what was there said is applicable here, and certainly establishes that there was no error prejudicial to the prisoner in this respect.—1 Greenl. on Evidence (15th ed.), § 163 and note ; *Lowery v. State,* 98 Ala. 45 ; *Matthews v. State,* 96 Ala. 62 ; *Pruitt v. State,* 92 Ala. 41 ; *Perry v. State,* 87 Ala. 30 ; *Lowe v. State,* 86 Ala. 47 ; *South v. State,* 86 Ala. 617.

McCLELLAN, J.—The evidence adduced on the inquiry whether Vail and his wife were permently or indefinitely absent from the State at the time of the trial was insufficient to establish a predicate for the admission of their testimony given before and taken down by the committing magistrate. For the State it was substantially to this effect: These witnesses said at the time of their preliminary trial that "when at home, they lived in Ohio." They at that time had no home in Alabama, but were camping out in the suburbs of Huntsville. A subpœna for them was sent to Limestone county and returned "not found." A subpœna issued also to the sheriff of Madison county, and was returned "not found;" but the officer testified that he looked and inquired for them in only two or three precincts of the county. The sheriff had also made hasty inquiries for them at several railway stations in two or three counties west of Madison. This was done during the brief stops of the train on which the officer was travelling at such stations. These inquiries were fruitless. Vail said if he did not settle in Alabama, he would go to Georgia where his partner lived; but he left Huntsville, and when last seen by any of the witnesses was going in the opposite direction. On the other hand, the evidence on the part of the defendant showed that Vail first came to Madison county some time before the fall of 1895, prospecting for a home. He expressed himself as pleased with the country, and said that he was coming here from Ohio to live. In the fall of 1895 he did return to Huntsville, travelling in a wagon, with a camping outfit, bringing his wife and children, and also some poultry, household goods and mules with him. While at Huntsville he stated to several persons that he had come to this State to live, and that he was going to buy land in Madison county. On leaving Huntsville, Vail went in the direction of Madison station. His wife and children and some household goods were in the wagon, a coop of poultry was strapped on the rear end of the wagon, and a mule was being led behind. To a witness who met him just before he reached Madison station he said he was going down near Swancott to look at some property. This witness further stated that Vail made the impression on him that he intended to settle in Madison county. To another witness, Vail stated that he intended to go into the neighbor-

[McMunn v. The State.]

hood of Madison Cross-roads, and rent some land there. It does not appear that any inquiries were ever made by the officers or others for him in that neighborhood. Vail's statement that when at home he resided in Ohio was a natural one for a man to make who had given up his home there, but had not acquired one elsewhere. It could not be reasonably said to mean other than that he was from Ohio. His wife put the statement in that form. She said: "We are from Ohio." The other evidence to which we have alluded shows clearly, we think, that they had come here to live. It is not probable they would come all the way from Ohio in a wagon, bring household effects, poultry and live stock and pay a social visit to strangers. They were not merely prospecting and intending to settle here if the country suited them. The head of the family had already seen the country and announced his purpose to return and live in it. And what evidence is there that they did not carry out this deliberate purpose which they had come hundreds of miles to execute? Only this, that the sheriff failed to find them in Limestone county, upon what effort does not appear, and the sheriff of Madison county had failed to find them in either one of three beats in that county to which his effort was confined to the exclusion of another precinct wherein they had expressed an intention to rent land and live ; and had failed to hear of them in response to the hasty inquiries, before referred to, made at some stations on a railway running through that section of the State. This is wholly insufficient. For aught the evidence shows to the contrary these witnesses may well have been residing in any one of the numerous other precincts of Madison county at the time of the trial ; and it is highly probable that they were residing there or elsewhere in that region of the State in consonance with the purpose which brought them from Ohio. It was, we conclude, not shown with reasonable certainty that these people were absent from the State when this case was tried, permanently or otherwise ; the defendant had a constitutional right to be confronted by them as witnesses, and the action of the court in admitting their former testimony was erroneous, and must work a reversal of the judgment.

The testimony of Wm. Mitchell, that he looked for the defendant for three days when trying to arrest him for

stealing Vail's watch, should not have been received. Its purpose, we suppose, was to show that defendent con· cealed himself from a consciousness of guilt; but standing alone it has no legitimate tendency in that direction.

The other rulings of the court to which exceptions were reserved are free from error.

Reversed and remamded.